**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-02632-NYW

DERIC VAN FLEET,

      Plaintiff,

v.

CAPTAIN TIDWELL, and
NURSE PRINSLOO,

      Defendants.

---

## OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on Defendants Captain Tidwell and Nurse Prinsloo's (collectively "Defendants") Motion to Dismiss or Alternatively Motion for Summary Judgment. [#17, filed January 16, 2015]. After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, the Motion to Dismiss is GRANTED, with leave to file an Amended Complaint no later than September 14, 2015.

## BACKGROUND

      Mr. Van Fleet is a *pro se* prisoner who was incarcerated at the Sterling Correctional Facility ("SCF") in Sterling, Colorado, when he filed this lawsuit on September 23, 2014, pursuant to 42 U.S.C. § 1983, claiming that Defendant Tidwell exercised excessive force and Defendant Prinsloo withheld medical treatment in contravention of his Eighth Amendment rights. Plaintiff seeks an unspecified amount of monetary damages. [#1].

Plaintiff also filed a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which was granted on October 2, 2014. [#3, #6]. That statute and the Local Rules of this District require a court to evaluate a prisoner complaint and dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); D.C.COLO.LCivR 8.1(b). On October 6, 2014, the court ordered Plaintiff to file an amended complaint to the extent he sought to pursue a cause of action against "Nurse Julie," who was not listed in the caption but named in the body of the Complaint. [#7]. Plaintiff failed to file an amended complaint, and the court issued an Order to Dismiss in Part and to Draw Case pursuant to D.C.COLO.LCivR 8.1(b) and (c), dismissing any claim as to Nurse Julie. [#9]. Defendants waived service on November 17, 2014. [#14].

The Parties consented to the jurisdiction of a United States magistrate judge on December 1, 2014 [#16], and the case was referred to Magistrate Judge Boland for all purposes pursuant to 28 U.S.C. § 636(c) and this District's Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges. [#20]. The matter was reassigned to the undersigned Magistrate Judge on February 10, 2015. [#22].

Mr. Van Fleet asserts two claims for relief, one against each Defendant. In support of his first claim, Plaintiff alleges that on February 2, 2014, Defendant Tidwell and his staff applied handcuffs and chains to him in a holding cell in a brutal manner that caused cuts and open wounds. [#1 at 3, 4]. In support of his second claim, Plaintiff alleges that on the same day and after the chains and handcuffs were removed, Defendant Prinsloo performed an incomplete anatomical examination of him that disregarded the cuts under his arm pits and across his chest

and back.  [*Id.* at 5].  Plaintiff further alleges that Defendant Prinsloo denied him medical assistance in treating the cuts.  [*Id.*]

On January 16, 2015, Defendants filed the pending Motion.  [#17].  The court instructed Plaintiff by minute order to file a response on or before February 17, 2015.  [#18].  On February 19, 2015, Plaintiff filed two letters with the court, one with regard to health issues [#23] and the other regarding excessive force [#24].  A copy of a court order was subsequently returned to the court as undeliverable to Plaintiff with a notation that he had been paroled March 18, 2015.  [*See* #27].  On August 3, 2015, Plaintiff submitted a letter in which he stated that since his release from SCF he has not received legal mail, requested an update on the status of this case, and informed the court of his current mailing address at a criminal justice center in Colorado Springs, Colorado.  [#28].

## STANDARD OF REVIEW

Defendants move in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56, and attach the affidavit of a Colorado Department of Corrections ("CDOC") Grievance Officer to their Motion [#17-1], along with two additional exhibits [#17-2, #17-3].  As an initial matter, the court must determine whether to review the Motion under a Rule 12(b) or Rule 56 standard. Rule 12(d) instructs:

> If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  "[W]here the district court intends to convert the motion, the court should give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by

Rule 56." *Nichols v. United States,* 796 F.2d 361, 364 (10th Cir. 1986) (internal quotation marks and citation omitted). Plaintiff was not given notice that the court might convert Defendants' Motion, and I decline now to so convert. Accordingly, I do not consider the exhibits attached to Defendants' Motion or Defendants' argument that they are entitled to summary judgment in their favor based on Plaintiff's alleged failure to exhaust his administrative remedies.[1]

**I.      Fed. R. Civ. P. 12(b)(1)**

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974) (emphasis added).

---

[1] While not entirely clear from the Defendants' Motion to Dismiss, to the extent Defendants argue the court lacks subject matter jurisdiction over Mr. Van Fleet's claims because he failed to exhaust his administrative remedies rendering the Complaint subject to dismissal pursuant to Rule 12(b)(1) [#17 at 4-5], such an argument has been squarely rejected by the Tenth Circuit. *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1209 (10th Cir. 2003); *Ayyad v. Gonzales*, Civil Action No. 05–cv–02342–WYD–MJW, 2007 WL 324564, at *1-2 (D. Colo. Jan. 30, 2007). In addition, Mr. Van Fleet is not required to affirmatively plead exhaustion of his administrative remedies in his Complaint to avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Jones v. Bock*, 549 U.S. 1999, 23-24 (2007).

## II.     Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.*  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).  It is not the duty of the court at this juncture to determine whether Plaintiff is entitled to prevail on his claims.

5

Because Mr. Van Fleet is appearing *pro se*, the court "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted). Furthermore, the court may, at any time and of its own accord, dismiss any action that is frivolous or which fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(b)(6); *Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

## ANALYSIS

### I.      Eleventh Amendment Immunity

Defendants argue that the Complaint against them should be dismissed based on Eleventh Amendment immunity. [#17 at 6-7].[2] Mr. Van Fleet does not specify in what capacity he is suing Defendants. [#1]. To the extent they are sued in their official capacity, they are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)). The Eleventh Amendment bars suits against a state by its own citizens, and generally immunizes state

---

[2] When citing to a particular page in a document, I refer to the ECF page number for ease and consistency of reference.

defendants sued in their official capacities from liability for damages or equitable relief.  *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  In addition, state employees acting in their official capacities are not "persons" subject to suit under § 1983.  *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994).  An exception to this general bar is a suit in which a plaintiff seeks to prospectively enjoin a state official from violating federal law, *Johns*, 57 F.3d at 1552; however, Plaintiff has not asked for such relief, nor could such relief be effective given the fact that Mr. Van Fleet has been paroled.[3]

Insofar as Plaintiff asserts any claims against Defendants in their official capacity, or for money damages, this court lacks subject matter jurisdiction over such claims.  The court now turns to the question of whether Mr. Van Fleet has stated a claim against Defendants in their individual capacity under the Eighth Amendment.

## II.   Personal Participation

Defendants argue that Plaintiff has not alleged Defendant Tidwell personally participated in the chaining and handcuffing, and that he may not be held liable under § 1983 merely because of his supervisory position.  [#17 at 7, 10].  In the section of the Complaint entitled Nature of the Case, Plaintiff alleges that Tidwell "knew [Plaintiff] was being chained up in a brutal manner," and that Tidwell's "staff members deliberately hurt [him] while chaining [him] up."[4]  [#1 at 3]. However, Plaintiff also alleges in Claim One that "Captain Tidwell and his staff chained [him] up like Hannible Cannible in a brutal manner causing cuts and bruises."  [#1 at 4].  Plaintiff

---

[3] To the extent that Mr. Van Fleet seeks any type of prospective injunctive relief, such a claim is moot given his parole.  *See McAlpine v. Thompson*, 187 F.3d 1213 (1999) (holding that prospective injunctive relief becomes moot upon inmate's release from incarceration).

[4] When quoting Mr. Van Fleet, the court reflects Plaintiff's papers verbatim, without any correction of spelling or grammar, or use of [sic] to denote any errors.

clarifies in his Letter filed in Response to the Motion to Dismiss that "Captain Tidwell is responsible for his staff personal which used excessive force handcuffing, chaining, and shackling me." [#24 at 1]. Plaintiff further alleges in the Letter that when he asked to speak with a lieutenant, Sergeant Tupper, who is not named in this lawsuit, had Plaintiff restrained, "got rough with [Plaintiff]," and reported to Captain Tidwell that Plaintiff had resisted. [*Id.*] Mr. Van Fleet claims in the Letter that "Captain Tidwell's Staff took it upon themselves to use excessive force and Tidwell allowed it," and that the "[correction officers] had the chains on around my wrists, my waist through my legs, across my chest, down the middle of my back." [*Id.* at 1-2].

While Plaintiff does not allege that Defendant Tidwell directed his staff to "rough" Plaintiff up, he does allege that Defendant Tidwell "knew" about his staff members' use of excessive force [#1 at 1]; Defendant Tidwell "knowingly knew that [Plaintiff] was being chained up in a Bruteal manner" [*id.* at 3]; and "while in Segragation Captain Tidwell and his staff Excessively, forcefully chained me up in a Brutal was Beyond standard procedures." [*Id.* at 4]. Though a close call, liberally construing Plaintiff's allegations as I must, I find that Mr. Van Fleet has alleged sufficient personal participation on the part of Defendant Tidwell to survive dismissal pursuant to Rule 12(b)(6) at this juncture.

### III.    Qualified Immunity

#### A.    Applicable Law

To the extent Mr. Van Fleet asserts his claims against Defendants in their individual capacity for violation of his Eighth Amendment rights, Defendants contend they are entitled to qualified immunity. [#17 at 13-15]. The doctrine of qualified immunity "shields government

officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted).  Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).  Therefore, the court must first consider whether, under Rule 12(b)(6), Plaintiff has pled sufficient facts to establish that his allegations that Captain Tidwell used excessive force to restrain him and Nurse Prinsloo subsequently deprived of adequate medical attention necessary to treat his wounds, amount to cognizable constitutional violations under the Eighth Amendment.

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law.  *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988).  "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted).  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

### 1.    Excessive Force Under the Eighth Amendment

When an inmate alleges that he was subject to excessive force while incarcerated, that claim of excessive force falls under the rubric of the Eighth Amendment's ban against cruel and unusual punishment. *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). The "core judicial inquiry" for a court presented with an excessive force claim by an inmate is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 4 (1992)). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Id.* (quoting *Hudson*, 503 U.S. at 7). However, "[t]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4. *See also United States v. LaVallee*, 439 F.3d 670, 687 (10th Cir. 2006). To prevail on an excessive force claim, Plaintiff "must show (1) that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) that defendants acted with a sufficiently culpable state of mind." *Norton v. City of Marietta,* 432 F.3d 1145, 1154 (10th Cir. 2005) (per curiam). "The objective component...is contextual and responsive to contemporary standards of decency. The subjective element...turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003)).

Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006).

To the extent Plaintiff wishes to hold Defendant Tidwell liable for culpable behavior in executing his supervisory role, such liability may be found only when the supervisor was personally "involved in the constitutional violation," and a "sufficient causal connection" existed between the supervisor and the constitutional violation. *Id.* at 1151 (quoting *Rios v. City of Del Rio,* 444 F.3d 417, 425 (5th Cir. 2006)). Plaintiff must first show that Captain Tidwell's subordinates violated the constitution and then that an "affirmative link" existed between Tidwell and the violation, "namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* (quoting *Holland v. Harrington,* 268 F.3d 1179, 1187 (10th Cir. 2001)). "[M]ere negligence" is not enough to establish liability under § 1983, and Plaintiff must allege that Captain Tidwell acted knowingly or with "deliberate indifference" that a constitutional violation would occur. *Id.* (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

### 2.   Deliberate Indifference to Medical Needs

In addition to exercising excessive force, prison officials may be liable for an Eighth Amendment violation for "indifference…manifested…in their response to the prisoner's needs or by…intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014). *See also Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (internal citations omitted). As with excessive force, the test for constitutional liability of prison officials depriving the inmate of or delaying medical attention involves both an objective and a subjective component. *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citation omitted). The prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'"

*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (holding that even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need for medical treatment was not obvious) (internal quotations and citation omitted). Furthermore, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

Under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (internal quotation and citation omitted). The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and further citation omitted). "'[A]n inadvertent failure to provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle,* 429 U.S. at 105–06). The plaintiff must allege that defendants personally participated in the Eighth Amendment violation. *See Jenkins v. Wood*, 81

F.3d 988, 994 (10th Cir. 1996) (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self*, 439 F.3d at 1231 (internal quotations omitted).

### B.      Defendant Tidwell

The allegations of excessive force are as follows: while in segregation, multiple prison officials including restrained Plaintiff in a holding cell with chains and handcuffs resulting in cuts and bruising; an unnamed prison official threatened to taser Plaintiff when he attempted to turn his head to read name plates; Plaintiff "did not resist or act dangerously as Captain Tidwell says"; and Plaintiff "stayed in [his] cell till [he] healed." [#1 at 4]. Plaintiff further alleges in the Letter regarding excessive force that he was left in the holding cell for two hours restrained, for an additional two hours unrestrained, that he was dressed only in shorts, and that the ceiling fan was operating on high such that he was uncomfortably cold. [#24 at 2]. Finally, Plaintiff claims the cuts under his left arm and on his wrists became infected and ultimately left scars. [*Id.* at 2-3]. Defendant Tidwell argues that Plaintiff has not satisfied either prong of the excessive force analysis, and that the use of force alone is insufficient to violate the Eighth Amendment.

"[D]e minimis uses of physical force are excluded from the cruel and unusual punishment inquiry unless 'repugnant to the conscience of mankind.'" *Ali v. Dinwiddie*, 437 Fed. App'x. 695, 699–700 (10th Cir. 2011) (quoting *Hudson*, 503 U.S. at 9-10). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Instead:

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the

13

> prisoner's interests or safety.... The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Even accepting Mr. Van Fleet's allegations as true, he has not alleged sufficient facts for this court to conclude that the use of force against him was a constitutional violation. While he repeatedly characterizes the force as "brutal," he fails to allege sufficient facts to support any such conclusion. Plaintiff cannot rely upon adjectives alone to state a constitutional violation. As to the fact that Sergeant Tupper restrained Plaintiff in the first instance, "changes in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and denials of privileges" are matters incident to the original sentence to prison, "which every prisoner can anticipate." *Jones v. Murray*, 962 F.2d 302, 309 (4th Cir. 1992) (citation omitted). *See also Burke v. Corrections Corp. of America*, No. 09–3068–SAC, 2010 WL 890209, at \*2 (D. Kan. March 10, 2010) (in finding that protective custody classification did not implicate prisoner's liberty interest, "routine classification decisions for security concerns fall within the broad discretion afforded prison officials in their day-to-day management of detention and correctional facilities") (citing *Hewitt v. Helms,* 459 U.S. 460 (1983)). As to the force used to apply the restraints, Plaintiff does not describe what restraint was used, and does not allege that prison officers hit, kicked, or used force against him once he was restrained. He alleges in a conclusory fashion that the restraints applied to him were excessive and caused cuts and bruising. [#1 at 4-5]. As pled, these conclusory allegations are insufficient to show an Eighth Amendment violation. *See Duncan v. Quinlan*, No. 15-cv-575-

LTB, 2015 WL 1726802, at *4 (D. Colo. Apr. 13, 2015). *Cf. Freeman v. Woolston*, No. 11–cv–01756–DME–MJW, 2013 WL 1283813, at *2 (D. Colo. March 28, 2013) (finding issue of material fact as to whether guards applied more than *de minimis* force against prisoner regarding allegations that they pushed and shoved the handcuffed prisoner "several times into solid objects, [and] took him to the ground and hit him numerous times about the head and back with closed fists."); *Van Houten v. Gaskill*, No. 05–3377–JAR, 2006 WL 749410, at *1 (D. Kan. March 22, 2006) (denying prison officer/defendant's motion to dismiss where plaintiff had alleged that defendant struck him twice in the face while he was in restraints, and that he suffered scrapes, cuts, and abrasions to his face). Indeed, the cuts and bruises Plaintiff complains of ultimately healed without medical treatment. *Cf. Dinwiddie,* 437 Fed. App'x. at 697–98, 700 (concluding that there was a material issue of fact as to whether prison guards used more than *de minimis* force where inmate alleged that guards punched and kicked him after he was handcuffed and not resisting, where inmate suffered abrasions to his wrist, contusions to his head, and bruising and pain in his shoulder which restricted inmate's abduction of his shoulder even one and one-half years later). Rather, Mr. Van Fleet's allegations suggest that the force applied was *de minimis. See Freeman*, 2013 WL 1283813, at *2 (citing *Wilkins*, 559 U.S. 34 (2010) (while Plaintiff does not have to establish that he suffered serious injuries as a result of the restraints, the extent of his injuries is a factor that the court may consider in determining whether the force applied was *de minimis.*). This conclusion is consistent with those of other courts that balanced "the need to maintain or restore discipline through force against the risk of injury to inmates occurs where prison officials were using force to keep order." *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999) (quoting *Hudson*, 503 U.S. at 6) (internal quotation marks

omitted). *See also Malik v. Mack*, 15 F. Supp. 2d 1047, 1051 (D. Kan. 1998) (finding excessive force did not result from a routine placement of restraints incident to a cell move during which plaintiff alleges he sustained a wrist injury and a cut lip). Having found no underlying constitutional violation, there can be no individual supervisory liability and therefore, all claims against Defendant Tidwell are dismissed.

### C.    Defendant Prinsloo

Plaintiff alleges that after the restraints were removed, Nurse Prinsloo administered a hasty and incomplete anatomical examination that disregarded the cuts under Plaintiff's arm pit, across his chest, and across his back, and that differed from the examination administered by a second nurse. [#1 at 3, 4]. Plaintiff further alleges that Nurse Prinsloo "denied [him] medical assistance," in that she denied his request to have his cuts cleaned and photographed.[5]    [*Id.*] Defendant Prinsloo argues that Plaintiff has failed to plead a serious medical need or that she acted with deliberate indifference. [#17 at 11]. This court agrees.

Plaintiff does not allege that a physician ordered that his cuts be treated, or that the cuts debilitated him to a state in which a lay person would easily recognize his need for medical attention. *See Boyette v. County of Washington*, 282 Fed. App'x. 667, 676 (10th Cir. 2008) (head laceration likely caused by prisoner banging head against cell door was "not so serious that

---

[5] Plaintiff asserts in his Letter regarding health issues submitted in response to the Motion to Dismiss [#23] that he suffers from a myriad of physical maladies and mental health issues, such as Post-Traumatic Stress Disorder, and that his mental health issues have gone untreated. He alleges that the stair cases in Segregation squeak unbearably, the prison officers walk the stairs "at least 15 times a day," and the commotion has exacerbated his health issues. [#23 at 1-2]. These allegations and assertions are unrelated to the claims that Defendant Prinsloo acted with deliberate indifference in denying medical care, and therefore, will not be considered in determining whether Plaintiff has sufficiently pled an Eighth Amendment violation in this instant action.

even a lay person would easily recognize the necessity for a doctor's attention"). *See also Dawes v. Coughlin*, 159 F.3d 1346 (2d Cir. 1998) (holding in summary order that a reasonable finder of fact could not conclude that a one-and-a-half (1 1/2) inch laceration was sufficiently serious to give rise to an Eighth Amendment claim). Furthermore, Plaintiff acknowledges that his cuts healed and he does not allege to have suffered a long-lasting or permanent injury as a result of the cuts. *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (noting officials may be held liable for constitutional violation when delay in medical care results in lifelong handicap or a permanent loss).

In addition, Mr. Van Fleet has not pled that Defendant Prinsloo acted with the requisite deliberate indifference when she administered an abbreviated exam and failed to clean his cuts. Constitutional liability does not follow inadvertent failure to provide adequate medical care. *See Martinez*, 563 F.3d at 1088. "A prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997)).[6] Determining that Plaintiff's cuts did not need examination or cleaning is akin to declining to take an x-ray, which is "'[a]t most,' medical malpractice that does not fall under the Eighth Amendment." *Callahan*, 471 F.3d at 1160 (quoting *Estelle*, 429 U.S. at

---

[6] This court recognizes that Nurse Prinsloo failed to treat the cuts, rather than pursue or recommend a different form of treatment, but nonetheless finds that she acted within her discretion in determining that the cuts did not merit further attention. *See Worrell v. Bruce*, 296 Fed. App'x. 665, 669 (10th Cir. 2008) (distinguishing between allegations indicating that the prisoner/plaintiff was dissatisfied with certain treatment and those indicating a failure to treat, and affirming district court's decision that a prison nurse's failure to suture forehead wound did not constitute an Eighth Amendment violation).

107).  In addition to failing to allege a serious medical need, Plaintiff has not pled that Defendant consciously disregarded a substantial risk of serious harm in failing to care for his wounds.

## CONCLUSION

For the foregoing reasons, it is ORDERED:

(1)     Defendants Tidwell and Prinsloo's Motion to Dismiss [#17] is GRANTED;

(2)     Plaintiff's Complaint [#1] is DISMISSED WITHOUT PREJUDICE;

(3)     Plaintiff is PERMITTED leave to file an Amended Complaint no later than September 14, 2015, that contains no other claims but provides additional information as to the already stated claims, should Plaintiff be able to cure the deficiencies identified herein.


DATED: August 13, 2015                         BY THE COURT:


                                               s/Nina Y. Wang_____
                                               United States Magistrate Judge